FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 15, 2021

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| AUGUSTINE O.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY,[2] <br><br> Defendant. | No. 1:20-CV-03234-SAB <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. The motions were heard without oral argument. Plaintiff is represented by D. James Tree; Defendant is represented by Jeffrey E. Staples and Timothy M. Durkin.

    Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

forth below, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 14, and denies Defendant's Motion for Summary Judgment, ECF No. 16

## I. Jurisdiction

On January 4, 2018, Plaintiff filed an application for concurrent disability insurance and supplemental security income. He alleged disability beginning April 22, 2017.

Plaintiff's application was denied initially and on reconsideration. On March 8, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On May 20, 2020, Plaintiff appeared with counsel, Robert Tree, and testified at a telephone hearing before ALJ Richard Hlaudy. Stacey Lambert, vocational expert also participated. The ALJ issued a decision on June 22, 2020, finding that Plaintiff was not disabled.

Plaintiff requested review by the Appeals Council; the Appeals Council denied the request on October 15, 2020. The Appeals Council's denial of review makes the ALJ's decision the "final decision" of the Commissioner of Social Security, which this Court is permitted to review. 42 U.S.C. § 405(g), 1383(c)(1)(3).

Plaintiff filed a timely appeal with the United States District Court for the Eastern District of Washington on December 14, 2020. ECF No. 1. The matter is before this Court pursuant to 42 U.S.C. § 405(g).

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if their impairments are of such severity that the claimant is not only unable to do their previous work, but cannot, considering claimant's age,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~2

education, and work experiences, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Commissioner has established a five-step sequential evaluation process to determine whether a person is disabled in the statute. See 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

**Step One**: Is the claimant engaged in substantial gainful activities? 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b), 416.920(b). If the claimant is not, the ALJ proceeds to step two.

**Step Two**: Does the claimant have a medically-severe impairment or combination of impairments? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. *Id.* §§ 404.1509, 416.909. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. *Id.* § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the impairment is severe, the evaluation proceeds to the third step.

**Step Three**: Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step.

Before considering to the fourth step, the ALJ must first determine the claimant's residual functional capacity. An individual's residual functional

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 3

capacity is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The residual functional capacity is relevant to both the fourth and fifth steps of the analysis.

**Step Four**: Does the impairment prevent the claimant from performing work they have performed in the past? 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to perform their previous work, they are not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

**Step Five**: Is the claimant able to perform other work in the national economy in view of their age, education, and work experience? 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett v. Apfel*, 108 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in her previous occupation. *Id*. At step five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id*.

### III.    Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance," *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 4

*Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). It "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation omitted). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

For claims filed on or after March 27, 2017,[3] like the present claim, new regulations apply regarding the evaluation of medical evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations eliminate any semblance of a hierarchy of medical opinions and state that the agency does not defer to any medical opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c. Specifically, the rules eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. 82 Fed. Reg. at 5853. In articulating the ALJ's consideration of medical opinions for persuasiveness, the ALJ considers the following factors: (1) Supportability and (2) Consistency; (3) Relationship with the claimant, including (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extend of the treatment relationship; (v)

---

[3] For claims filed prior to March 27, 2017, an ALJ was to give more weight to "those physicians with the most significant clinical relationship with the plaintiff." *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~5

examination relationship; (4) Specialization; and (5) Other factors, including whether the medical source has familiarity with the other evidence or an understanding of SSA's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The most important factors in evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Supportability and consistency are further explained in the regulations:

(1) *Supportability.*
The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.*
The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c); 416.920c(c).

When a medical source provides multiple medical opinions, the ALJ must articulate how it considered these opinions in a single analysis applying the above-listed factors. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). If equally persuasive medical opinions about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must articulate how it considered the other most persuasive factors in making its decision. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

### IV.  Statement of Facts

The facts have been presented in the administrative record, the ALJ's decision, and the briefs to this Court. Only the most relevant facts are summarized herein.

Plaintiff worked as a car salesman for 20 years. Starting in 2014, his health

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~6

declined. He suffered a stroke and developed pancreatitis, diabetes, GERD, hypertension, obstructive sleep apnea, and headaches. He also was diagnosed with posttraumatic stress disorder (PTSD), depression, anxiety and schizophrenia. In 2017, he was in the hospital for three weeks and he was unable to return to work. Since that time, Plaintiff has had difficulty managing his health problems and frequently ends up in the hospital. Within a year's time, he had fifteen hospitalizations or visits to the emergency room, many times because he was experiencing abdominal pain, nausea, and vomiting. He has been admitted a number of times for multiple-day stays due to his pancreatitis. As a result, Washington state has provided Plaintiff with a caregiver to assist him up to 34 hours a week.

Plaintiff has severe anxiety around people. He reported that he experienced abandonment, physical abuse, and sexual abuse as a child and as a result, he is fearful and paranoid. He reports that he experiences auditory and visual hallucinations. He testified that he is not reliable because he feels good one day and is bedridden, exhausted, and socially isolated the next day.

**V. The ALJ's Findings**

The ALJ issued an opinion affirming denial of benefits. AR 15-29. The ALJ found that Plaintiff met the insured status requirements through December 31, 2022. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 22, 2017, the alleged onset date. AR 17.

At step two, the ALJ identified the following severe impairments: pancreatitis, status-post pancreatic tumor; diabetes; gastroesophageal reflux disease (GERD); hypertension; obstructive sleep apnea; headaches, anxiety disorder; posttraumatic stress disorder (PTSD); depression; schizophrenia; and alcohol use disorder. AR 18.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7**

the listed impairments. AR 18. Ultimately, the ALJ concluded that Plaintiff has a residual function capacity ("RFC") to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently stoop, kneel, crouch, and crawl.

AR at 20.

At step four, the ALJ found Plaintiff had past relevant work as a car dealership administrative clerk, but this job exceeded Plaintiff's current residual functional capacity and therefore, Plaintiff was unable to perform past relevant work. AR 24.

At step five, the ALJ found that Plaintiff was not disabled and capable of performing work that exists in significant numbers in the national economy, including router, marker, and assembler, small products. AR 28.

**VI. Issues for Review**

(1) Whether the ALJ properly rejecting Plaintiff's symptom testimony?

(2) Whether the ALJ properly evaluated the medical evidence?

**VII. Discussion**

Initially, the Court notes that although the ALJ concluded that while Plaintiff's state-provided caregiver was helpful, it was not medically necessary based on the ALJ's review of the medical evidence, this finding is not supported by the record and is, at best, speculative. On the contrary, Plaintiff's reliance on a caregiver for basic self-care is consistent with the opinions of the evaluating psychologists that Plaintiff would have difficulty successfully performing work activities over the course of a workday. Additionally, the ALJ's findings regarding Plaintiff's credibility and its consideration of certain psychological evaluations was in error and not supported by the record.

**(1) ALJ's Credibility Finding**

The ALJ concluded that while Plaintiff's medically determinable

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 8**

impairments could reasonably be expected to cause the alleged symptoms, his statement's concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR21.

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ engages in a two-step analysis. *Garrison v. Colvin* 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation and quotation omitted). If the claimant satisfies the first step of the analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (citation and quotation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation and quotation omitted).

The ALJ found that Plaintiff's allegations of incapacitating dysfunction due to pancreatitis and other gastrointestinal symptoms are not fully consistent with the overall evidence, noting benign workup findings and physical examinations that have been unremarkable. AR21. It found that his complaints of neuropathy were not supported by his normal gait and intact motor function.

The ALJ also found that his allegations of disabling mental symptoms were inconsistent with his ability to previously work with his conditions. He noted that despite longstanding issues with anxiety, depression, PTSD, and psychosis, his conditions did not prevent him from working 17 years as a car salesman until April 2017, when physical reasons caused him to stop working. The ALJ also noted that his mental issues have been responsive to medication and the record indicates that he denied feeling down, depressed, or hopeless to his treatment providers.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~9

The ALJ found that Plaintiff "exaggerated and made inconsistent statements about his symptoms" based on his profile on a Personality Assessment Inventory (PAI) administered by Dr. Genthe in March 2020.

The ALJ also relied on a few minor inconsistencies in statements Plaintiff made to his treatment providers to discredit all of his statements regarding his symptoms, including inconsistent statements about his participation in special education services; when his auditory hallucinations began; whether he experienced hallucinations; and inconsistent statements in March 2020 about his alcohol use. The ALJ concluded that these inconsistencies undermined the reliability of his self-reported symptoms and limitations.

The ALJ's reasons for rejecting Plaintiff's credibility are not supported by the record and therefore fail to meet the clear and convincing standard. As the Ninth Circuit has explained, when discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. *Garrison*, 759 F.3d at 1017. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* "Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of a patient's overall well-being and the nature of [his] symptoms." *Id.* "They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* "Caution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work."

Here, while some of his treatment providers noted that Plaintiff sometimes

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~10

presented without depressive symptoms, most of these treatment providers were from the pain clinic, not Plaintiff's mental health treatment providers. *See Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that it was unsurprising that the orthopedic doctor did not mention the claimant's specific mental health symptoms and the fact that she did not "say little about the extent to which [the claimant] may in fact have been suffering from such symptoms."). Moreover, the record is replete with instances where Defendant is depressed, despondent and at one point having suicidal thoughts. Notably, in April 2018, Plaintiff had a crisis assessment with Central Washington Comprehensive Mental Health. At the minimum, the fact that Plaintiff sometimes presented without depression symptoms is consistent with his testimony that he had days where his depression is less severe and days where it is debilitating.

The ALJ erred in discrediting Plaintiff's symptom testimony to the extent that he did so by relying on Dr. Genthe's report. At best, the tests administered by Dr. Genthe were equivocal, and therefore cannot provide a basis for discrediting Plaintiff's symptom testimony. Notably, Dr. Bowes noted there was no evidence of malingering in her assessment of Plaintiff. Dr Genthe's equivocal conclusions are not clear and convincing reasons to reject Plaintiff's testimony.

Finally, the minor inconsistencies relied on by the ALJ are not clear and convincing reasons to reject Plaintiff's testimony. There are over 2500 pages of medical records. Within those records, the ALJ found four inconsistencies, while apparently ignoring other times where his testimony was corroborated, especially with respect to his alcohol use. For instance, when he was examined for his broken finger, he stated he did not drink any alcohol and none was detected in his urine.

(2) **Evaluating Medical Evaluation**

The ALJ found Dr. Kester's, a state agency psychological consultant, opinion persuasive because it was generally consistent with the longitudinal evidence, which included his ability to work with his longstanding conditions in

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~11

the past, his response to treatment, and his benign mental status findings during his appointments.

On the other hand, the ALJ found the opinions of Dr. Bowes, Dr. Metoyer, and Dr. Genthe not persuasive because their opinions were inconsistent with his work history as his longstanding mental conditions did not prevent him from working as a car salesman for 17 years, were inconsistent with treatment notes from other providers that indicate his symptoms have been responsive to medication and he has regularly denied any depressive symptoms during appointments, were inconsistent with the observations of treating providers who have typically observed Plaintiff being in no acute distress and no observations of hallucinations or delusions, and because they relied, in part, on Plaintiff's self-reported symptoms/limitations.

The ALJ's conclusions regarding Dr. Bowes, Dr. Metoyer, and Dr. Genthe are not supported by the record. Rather, the record establishes that the opinions of these evaluators are well-supported by the mental status findings, clinical interview, personal observations, and psychometric testing and are consistent with the record; therefore, the ALJ erred in finding them not persuasive.

Notably, the ALJ failed to take into consideration evidence in the record that Plaintiff's mental health status declined considerable after his physical conditions prevented him from working. Moreover, the ALJ failed to take into consideration that Plaintiff's symptoms, like typical mental health symptoms, wax and wane in the course of treatment. Also, the ALJ cannot reject mental health evaluations simply because the evaluators were relying, in part, in Plaintiff's self-report. The Ninth Circuit has recognized that consideration of a person's self-report is necessary when evaluating mental issues. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

a. Dr. Genthe

Dr. Genthe noted in the Personality Assessment Inventory (PAI) that there

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~12

may have been some idiosyncratic responses to particular items that could affect test results. He noted:

> [w]ith respect to negative impression management, there are indications suggesting that the client tended to portray himself in an especially negative or pathological manner. This pattern is often associated with a deliberate distortion of the clinical picture, and the critical items should be reviewed to evaluate the possibility of malingering. Alternative explanations include the possibility that the test results reflect a cry for help, or an extreme or exaggerated negative evaluation of oneself and one's life.

AR3239.

Dr. Genthe did not, however, find that Plaintiff was malingering. Dr. Genthe also noted that Plaintiff had moderate difficulties following the conversation, and his abstract thought was not within normal limits. AR3238. His memory was not within normal limits, given that he was able to recall only 1 of 4 objects after a five-minute delay. AR3237. He also noted that Plaintiff's reality testing was somewhat impaired as evidence by his delusional/paranoid thinking, history of depression and anxiety, and his history of hallucinations. AR3237. Dr. Genthe noted that Plaintiff's affect appeared anxious and depressed. AR3237.

Dr. Genthe rated the overall severity of Plaintiff's mental impairments as marked, as well as marked severity in his ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and to complete a normal work day and work week without interruptions from psychologically based symptoms. AR3236.

Dr. Genthe's conclusions are supported by his administration of the PAI and his observations and interactions with Plaintiff and his conclusions are consistent with the record that demonstrated bouts when Plaintiff experienced hallucination.

    b.    <u>Dr. Bowes</u>

Dr. Bowes conducted a psychological assessment in April 2018. AR1083. Dr. Bowes performed a Trails A and B and noted the Trails A result supported a

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~13

marked deficit in cognitive functioning. AR1086. Dr. Bowes did not find any evidence of malingering. AR1085. Dr. Bowes found marked effect on Plaintiff's ability to perform the following basic work activities: (1) understand, remember, and persist in tasks by following detailed instruction; (2) learn new tasks; (3) perform routine tasks without special supervision; (4) adapt to changes in a routine work setting; (5) ask simple questions or request assistance; (6) communicate and perform effectively in a work setting; (7) maintain appropriate behavior in a work setting; and (8) set realistic goals and plan independently. AR1086. Dr. Bowes found severe effect on Plaintiff's ability to perform the following basic work activities: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and (2) complete a normal work day and work week without interruptions from psychologically based symptoms. AR1086-87.

Dr. Bowes' conclusions are supported by the administration of the Trails A and B, and observations and interactions with Plaintiff.

c. Dr. Metoyer

In performing a psychological examination, Dr. Metoyer noted that Plaintiff's affect was congruent with his stated mood, which was sad, lonely, depressed, irritable and frustrated. AR1496. Dr. Metoyer noted that Plaintiff was only able to recall one object out of three. AR1496. Dr. Metoyer concluded that due to his anxiety, PTSD, social isolation and mood symptoms, Plaintiff's ability to maintain regular attendance in the workplace is moderately impaired, as well as his ability to complete a normal work day or work week without interruption from his anxiety, PTSD, and mood symptoms. AR1498. Similarly, his ability to deal with the usual stress encountered in the workplace is markedly impaired if it involves persistent activity, complex task, task pressure or interacting with other individuals. AR1498. Dr. Metoyer noted that he reviewed records including the Department of Social and Health Services psychological/psychiatric evaluation

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~14

1 | record dated April 8, 2018. AR1495.

2 |     Dr. Metoyer's conclusions are supported by his review of the record, as well
3 | as his interaction and observations of Plaintiff, and his conclusions are consistent
4 | with the record.

5 |     (3)  **Award for Immediate Benefits**

6 |     Once the opinions of Dr. Genthe, Dr. Bowes, and Dr. Metoyer are properly
7 | considered, it becomes clear that Plaintiff is unable to work on a regular and
8 | continuing basis. Additionally, Plaintiff's frequent hospitalizations and his need for
9 | a caregiver to help him manage day-to-day tasks establish that he is unable to work
10 | full-time. As such, the ALJ erred in finding that he was not disabled. Because a
11 | remand of this case would only delay an award, the Court reverses the ALJ's
12 | decision and remands for an immediate calculation and award of benefits.
13 | //
14 | //
15 | //
16 | //
17 | //
18 | //
19 | //
20 | //
21 | //
22 | //
23 | //
24 | //
25 | //
26 | //
27 | //
28 | //

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~15

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, ECF No. 16, is **DENIED**.

3. The decision of the Commissioner is **REVERSED** and **REMANDED** for an immediate calculation and award of benefits.

4. Judgment shall be entered in favor of Plaintiff and against Defendant.

5. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the District Court Executive is directed to substitute Kilolo Kijakazi for Andrew Saul.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 15th day of December 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** ~ 16